OPINION
This is an appeal from the Geauga County Court of Common Pleas. Appellant, Patrick Burrier, appeals the trial court's judgment entry finding him guilty of twenty-one counts as follows: one count of sexual imposition, one count of illegal use of a minor in nudity-oriented material, three counts of pandering obscenity involving a minor, eight counts of pandering sexually oriented matter involving a minor, six counts of illegal use of a minor in nudity-oriented material or performance, one count of aggravated possession of drugs, and one count of possession of drugs.
On July 25, 1997, appellant was indicted on thirty-one counts: count one, corruption of a minor, in violation of R.C.2907.04(A), a felony of the fourth degree; count two, illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.32.3(A)(1), a felony of the second degree; counts three to ten, pandering obscenity involving a minor, in violation of R.C. 2907.32.1(A)(5), a felony of the fourth degree; counts eleven to eighteen, pandering sexually oriented matter involving a minor, in violation of R.C. 2907.32.2(A)(5), a felony of the fifth degree; counts nineteen to twenty-six, illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.32.3(A)(3), a felony of the fifth degree; count twenty-seven, possessing criminal tools, in violation of R.C.2923.24, a felony of the fifth degree; count twenty-eight, aggravated possession of drugs, in violation of R.C.2925.11(A)(C)(1)(a), a felony of the fifth degree; count twenty-nine, possession of drugs, in violation of R.C.2925.11(A)(C)(2)(b), a felony of the fourth degree; and counts thirty and thirty-one, promoting prostitution, in violation of R.C. 2907.22(A)(3), a felony of the third degree.
On July 30, 1997, at the arraignment, appellant entered a plea of "not guilty" to all of the charges. On August 22, 1997, appellant filed an "Omnibus Motion for Appropriate Relief," composing of a motion to suppress evidence obtained by a search warrant. On October 7, 1997, after a suppression hearing, the trial court overruled appellant's motions. On October 23, 1997, appellant waived his right to be tried by a jury. Thereafter, a bench trial took place from October 27, 1997 to October 30, 1997.
Appellee, the state of Ohio, called Brandy McElroy ("Brandy"), a fifteen-year-old girl, to the stand. She testified that her friend, Melissa Dodge ("Melissa"), a sixteen-year-old girl, introduced her to appellant. In February 1997, both girls were planning to run away and decided to stay at appellant's house. She recalled staying with appellant from February 19, 1997 to February 25, 1997. Brandy stated that she slept in appellant's bed. She recalled that on the first night, nothing occurred, but the second night she and appellant got drunk. She explained that she had been drinking vodka and orange juice and that appellant had given her two valiums. Further, she indicated that they both smoked marijuana. The next morning she felt different and appellant informed her that they had engaged in sexual intercourse. She revealed that, on other occasions, appellant had caressed different parts of her body.
During her stay with appellant, Brandy stated that appellant asked her and Melissa whether they wanted to work for him and earn some money. He explained that they would be dancing and would receive $50 per hour. Appellant informed Brandy that the dances would be processed through the internet. She understood that to mean that a video of her and Melissa dancing would be shown on the internet throughout the country. At appellant's request, Brandy began dancing topless. Further, while Brandy lived with appellant, she indicated that he had taken her to Trilogy's, an adult nightclub.
Appellee called Detective John Hopkins ("Det. Hopkins") to the stand. He related that on March 14, 1997, after he received a tip from two juveniles, Brandy and Melissa, he obtained a search warrant for appellant's home. Apparently, Brandy and Melissa informed Det. Hopkins that appellant had video recorded them while they were dancing in a state of nudity. Once officers entered appellant's residence, they seized computers, videotapes, computer disks, and controlled substances. Det. Hopkins revealed that they located "[h]undreds of what appeared to be child pornography images off of the laptop [computer] and disks that were seized at the home."
Detective Johnston ("Det. Johnston") testified that he seized the laptop computer from appellant's bedroom. He also found a number of narcotics in the bedroom. He recalled that the laptop was placed in a box and labeled.
Agent John Saraya ("Saraya") of the Ohio Bureau of Criminal Investigation testified that he was involved in downloading the images from appellant's laptop onto disks where the pictures were then viewed. Saraya revealed that he downloaded more than one thousand images from the computer.
James Dee ("Dee"), the owner of an computer imaging company, testified that in March 1997, he was contacted by the prosecutor's office to examine the computers seized from appellant's residence. Dee recalled that he spent five to ten days assisting officers in accessing the computer system. He also testified that the laptop computer was not connected to the network, but it was in its own carrying case. When Dee gained access into the laptop, he indicated that there were "over a thousand" pictures or computer images. These images were contained in directories within the laptop and were not off of the internet. He related that exhibits five through twenty-nine were the images found on the laptop computer as well as on the diskette. Dee helped police officers print the pictures off of the computer.
Dr. R. Daryl Steiner ("Dr. Steiner") was called to the stand. He related that he examined twenty-six images of computer printouts from the laptop that was seized from appellant's residence. The printouts contained images of several children, who were nude or engaged in different sexual activity. Dr. Steiner determined with a reasonable degree of certainty that in all but two of the pictures, the children were under the age of eighteen. In the two pictures, he was unable to ascertain the age of the girls.
Following Dr. Steiner's testimony, Ian Mariano ("Ian") testified that he was a programmer analyst. Prior to that position, he did some freelance web page designing, network administrating, and consulting. He met appellant through a mutual friend. Appellant owned several computers and Ian informed him what was needed for a network computer system in the basement. Ian then assembled the server computer and cable for the network. According to Ian, the video cameras in the home were hooked into the computer system. Appellant explained to Ian that he wanted the computer system for "an adult service with video conferencing[,]" where someone talks to a girl through the computer and she strips for that person. Ian revealed that appellant's laptop was not part of the computer system in his basement. Further, Ian had no idea what information was contained in the laptop computer.
Kathleen Scranton ("Kathleen") testified that she was employed as a secretary by Mentor Landscape, appellant's landscaping business. She stated that she did the payroll for appellant's business on his laptop. The prosecutor showed Kathleen exhibit four, the laptop, and she mentioned that it appeared to be the same computer that she used. She indicated that she never saw anyone else use the laptop, except appellant. Kathleen also recalled having a conversation with appellant where he informed her that he had had someone download "a bunch of pornography into his [laptop] computer and that he had to clean it up."
Amy Waseleski ("Amy"), a fifteen-year-old, testified that she met appellant through a friend. She recalled going to appellant's home to "hang out" in July 1997. Amy stated that she was with two friends the first time she visited appellant's house. The second time she went there, Brandy and another friend, Kenyada Reid ("Kenyada"), accompanied her. During that visit, appellant, Kenyada, and Amy dropped Brandy off at work. On the way back to appellant's house, Kenyada told Amy that he needed $150 to pay for counseling. Appellant heard this and told Amy that "if [she] sucked his dick that he would pay [her] the $150 to give to [Kenyada]." Amy did not know whether appellant was serious or joking, but when they arrived at appellant's home, he asked her to "suck his dick" again and she did it. Amy explained that she performed oral sex on appellant because Kenyada needed the money and she thought she could help him.
When Kenyada was called to the stand, he related that appellant spent a lot of money on his girlfriend, Brandy. Appellant bought Brandy clothes and a coat and said he was going to buy her a car for her sixteenth birthday. Appellant also told Kenyada that "he's been with [Brandy] before." Appellant further mentioned to Kenyada that Brandy and Melissa danced in front of a camera that they thought was turned on, but it was not. Kenyada recalled that in July 1997, while he and Brandy were having sexual intercourse, appellant watched. Appellant told Kenyada that he and Brandy were being video recorded, but Kenyada did not see a video camera. Kenyada also stated that he heard appellant ask Amy to perform oral sex. The following morning appellant gave him $150 and told him that the money was for Amy performing oral sex on him.
The parties stipulated that the computer printouts, exhibits five through twenty-nine, were "true and accurate representations of data and information contained in the laptop computer on whatever memory it uses." Appellant's attorney objected to the introduction of the exhibits, but the trial court admitted them.[1]
At the conclusion of appellee's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court granted appellant's motion as to counts three and four of the indictment, pandering obscenity involving a minor, but not as to the remaining counts. Thereafter, appellee moved to dismiss count thirty-one of the indictment, promoting prostitution, which the trial court granted.
The trial court found appellant guilty of the following: sexual imposition, a lesser included offense of corruption of a minor, a violation of R.C. 2907.06(A)(4), a misdemeanor of the third degree; illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.32.3(A)(1), a felony of the second degree; three counts of pandering obscenity involving a minor, in violation of R.C. 2907.32.1(A)(5), a felony of the fourth degree; eight counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.32.2(A)(5), a felony of the fifth degree; six counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.32.3(A)(3), a felony of the fifth degree; aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree; and possession of drugs, in violation of R.C. 2925.11(A)(C)(2)(b), a felony of the fourth degree.
On November 13, 1997, appellant filed a motion for acquittal as to count two of the indictment, illegal use of a minor in nudity-oriented material or performance, and a motion for a new trial regarding the remainder of the complaint. Appellee filed a brief in opposition to the motion on November 20, 1997. On November 24, 1997, the trial court overruled both motions.
A sentencing hearing took place on December 30, 1997. On January 8, 1998, appellant was sentenced as follows: for sexual imposition, sixty days in the Geauga County Safety Center; for three counts of pandering obscenity involving a minor, twelve months incarceration in a state penal institution, with the terms to run concurrently, and a $1,500 fine; for eight counts of pandering sexually oriented matter involving a minor, nine months incarceration in a state penal institution, with the terms to run concurrently, and a $1,000 fine; for six counts of illegal use of a minor in nudity-oriented material or performance, nine months incarceration in a state penal institution, with the terms to run concurrently, and a $1,000 fine; for aggravated possession of drugs, nine months incarceration in a state penal institution, a $1,000 fine, and suspension of his driver's license for one year; for possession of drugs, twelve months incarceration in a state penal institution, a $1,000 fine, and suspension of his driver's license for one year; and for illegal use of a minor in nudity-oriented material or performance, six years incarceration in a state penal institution, and a $10,000 fine. All periods of incarceration were to run concurrently and the suspension of the driver's license was to run concurrently. Appellant timely filed the instant appeal and now asserts the following assignments of error:
 "[1.] The state failed to present sufficient evidence to establish, beyond a reasonable doubt, the elements of the offenses of pandering obscenity involving a minor, pandering sexually oriented matter involving a minor, and the illegal use of a minor in nudity oriented [sic] material or performance. Thus, the trial court erred in denying [appellant's] motion for acquittal. Further, convictions for these offenses violate the Due Process Clauses of the Fifth
and Fourteenth Amendments of the United States Constitution and Section 16, Article 1 of the Ohio Constitution.
 "[2.] The weight of the evidence does not support convictions of pandering obscenity involving a minor, pandering sexually oriented matter involving a minor, and illegal use of a minor in nudity oriented [sic] material or performance. Convictions for these offenses violate the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution and Section 16, Article 1 of the Ohio Constitution."
 As appellant's assignments of error are interrelated, they will be addressed in consolidated fashion. In his first assignment of error, appellant claims that the state failed to present sufficient evidence for the offenses of pandering obscenity involving a minor, pandering sexually oriented matter involving a minor, and the illegal use of a minor in nudity-oriented material or performance, and thus, the trial court erred in overruling appellant's motion for acquittal. In his second assignment of error, appellant alleges that his convictions for the foregoing offenses were against the manifest weight of the evidence. Further, he argues that appellee failed to establish the chain of custody of the laptop.
As the court stated in State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 10-11:
 "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 "`"(***) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. ***'"
 "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' *** `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' ***
 "On the other hand, `manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(***) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (***)'" ***" (Citations omitted and emphasis sic.)
 In the case sub judice, appellant was convicted of several offenses, but claims that appellee failed to establish the element of possession for his convictions for pandering obscenity involving a minor, pandering sexually oriented matter involving a minor, and illegal use of a minor in nudity-oriented material or performance.
Possession is defined by R.C. 2901.21(C)(1) as "a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession."
Appellant was convicted of three counts of pandering obscenity involving a minor, in violation of R.C. 2907.32.1(A)(5), which states that:
 "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
 "* * * "(5) Buy, procure, possess, or control any obscene material, that has a minor as one of its participants; * * *"
 Appellant was also convicted of eight counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.32.2(A)(5), which provides that:
 "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
"* * *
 "(5) Solicit, receive, purchase, exchange, possess or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality; ***"
 For the foregoing convictions, appellee presented evidence to prove that appellant had hundreds of child pornography images on his laptop computer through the testimony of Det. Hopkins, Saraya, and Dee. Furthermore, appellant's secretary, Kathleen, testified that other than her use of the laptop for payroll, appellant was the only person to use it. Kathleen also recalled having a conversation with appellant where he told her that he needed to clean up his laptop computer because he had a lot of pornography on it. In addition, Ian stated that when he networked the computers in appellant's basement, the laptop was not part of the system.
Moreover, after Dr. Steiner examined the computer images, exhibits five through twenty-nine, he revealed that the children in the images were under the age of eighteen. Thus, it is our determination there was sufficient evidence to establish that appellant possessed the images on his laptop because he had knowledge that the images were on it and that the images were of minors. Furthermore, after weighing the evidence, we conclude that his convictions for three counts of pandering obscenity involving a minor, in violation of R.C. 2907.32.1(A)(5), and eight counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.32.2(A)(5), were not against the manifest weight of the evidence.
Additionally, appellant was convicted of one count of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.32.3(A)(1), a felony of the second degree, which states:
"(A) No person shall do any of the following:
 "(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:
 "(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance;
 "(b) The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used. ***"
 To support appellant's conviction of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.32.3(A)(1), appellee demonstrated through Brandy's testimony that she and Melissa, who were both minors, danced topless for appellant. According to Brandy, appellant told her that a video of her and Melissa dancing would be processed through the internet. Hence, there was sufficient evidence to convict appellant of an R.C. 2907.32.3(A)(1) violation. It is also our view, after reviewing the record, that the conviction for one count of illegal use of a minor in nudity-oriented material was not against the manifest weight of the evidence.
Finally, appellant was convicted of six counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.32.3(A)(3), a felony of the fifth degree, which provides:
"(A) No person shall do any of the following:
 "*** "(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:
 "(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.
 "(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred. ***"
 Again, as previously mentioned, the testimony of Det. Hopkins, Saraya, and Dee demonstrated that appellant possessed computer images on his laptop of minors, who were not his children. Further, appellant told Kathleen that he needed to clean up his laptop because it had a lot of pornography on it. Dr. Steiner's testimony revealed that the computer images, exhibits five through twenty-nine, were of children under the age of eighteen. Therefore, it is our determination that there was adequate evidence to convict appellant of six counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.32.3(A)(3). Moreover, after weighing the evidence, it is our view that appellant's convictions were not against the manifest weight of the evidence.
We note that it is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Here, the trial court must have found appellee's witnesses to be credible. Hence, we conclude after reviewing the record and weighing the evidence and all reasonable inferences, that the judgment of the trial court was supported by competent, credible evidence. There was also sufficient evidence presented at trial to show that appellant committed the crimes with which he was charged. Likewise, after an examination of the entire record, it is our view that there was no manifest miscarriage of justice requiring the convictions to be reversed.
Appellant also alleges that appellee failed to prove the chain of custody of his laptop computer.[2] Pursuant to Evid.R. 901(A), an item of evidence must be properly authenticated before it is admitted into evidence. Evid.R. 901(A) generally provides that a proponent of an item can establish its authenticity by submitting "* * * evidence sufficient to support a finding that the matter in question is what its proponent claims."
In applying Evid.R. 901(A), the courts of this state have declared that the chain of custody for a specific item of evidence can be shown either by direct testimony or by inference. See,e.g., State v. Stovall (Jan. 22, 1998), Cuyahoga App. No. 72149, unreported, 1998 WL 23826. These courts have also held that items of physical evidence are admissible even when a "strict" chain of custody has not been established. See, e.g., State v. Reyes (Jan. 26, 1996), Wood App. No. WD-95-007, unreported, 1996 WL 28182.
 "Although the burden of establishing the chain of custody of a particular piece of evidence is on the state, the burden in not an absolute one. State v. Moore (1973), 47 Ohio App.2d 181, 183, * * *. As long as it is reasonably certain that no tampering or substitution occurred regarding the particular item of evidence, the state need not negate all possibilities of tampering or substitution. Id. See, also, State v. Blevins (1987), 36 Ohio App.3d 147, 150, * * *. Moreover, even when a break in the chain of custody is uncovered, it goes to the credibility of the evidence and not to its admissibility. Blevins, supra, at 150, * * *." State v. Barzacchini (1994), 96 Ohio App.3d 440, 458.
 Finally, in reviewing authenticity determinations, the appellate courts of this state have held that such determinations will be reversed only when there has been an abuse of discretion. See, e.g., State v. Blazavich
(June 2, 1997), Washington App. No. 96 CA 9, unreported, 1997 WL 306615.
In the present matter, our review of the transcript demonstrates that several witnesses testified regarding the chain of custody of appellant's laptop computer. Det. Johnston testified that he found the computer during a search of appellant's residence in his bedroom. He recalled that the laptop was placed in a box and labeled. Det. Johnson, Det. Hopkins, Saraya, and Dee identified the laptop computer at trial as the one seized from appellant's residence and as the one accessed during the investigation.
Taken as a whole, the testimony of Det. Johnson, Det. Hopkins, Saraya, and Dee constituted adequate evidence establishing the chain of custody as to the laptop computer. Thus, the evidence was sufficient to establish a lack of tampering and a proper chain of custody. Pursuant to the foregoing analysis, this court holds that the trial court did not abuse its discretion in admitting the laptop computer into evidence.
Therefore, appellant's arguments are not well-taken.
For the foregoing reasons, appellant's first and second assignments of error lack merit. The judgment of the Geauga County Court of Common Pleas is affirmed.
______________________________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., DONOFRIO, J., Ret., Seventh Appellate District, sitting by assignment, concur.
[1] We note that appellant did not appeal the admission of these exhibits.
[2] However, appellant did not object to the laptop computer's admissibility on the grounds of lack of chain of custody.